Case 2:17-cv-00833-TMP   Document 1   Filed 05/19/17   Page 1 of 20

FILED
2017 May-19 PM 05:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DISTRICT

| | |
|---|---|
| **REHAN MOBEEN** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NUMBER: _____ |
| | ) |
| **LIFE INSURANCE COMPANY** | ) |
| **OF NORTH AMERICA AND** | ) |
| **APOLLO EDUCATION GROUP,** | ) |
| **INC.** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Comes now the Plaintiff, Rehan Mobeen, and hereby files his Complaint against Defendants, Life Insurance Company of North America and Apollo Education Group, Inc.

## PARTIES

1. The Plaintiff, Rehan Mobeen ("Mobeen"), is an insured under Short Term Disability Policy FLK-980123 and Long Term Disability Policy No. FLK-980124 (collectively "the Plan"), who has been improperly denied short term disability benefits under the Plan.

2. Defendant, Life Insurance Company of North America ("LINA"), is the Claims Administrator for the Plan, issued to Apollo Education Group, Inc., that has improperly denied owed benefits to Mr. Mobeen. Upon information and

belief, LINA is a foreign corporation incorporated in the State of Delaware, which conducts business generally in the State of Alabama and specifically within this District.

3. Apollo Education Group, Inc. ("Apollo") was Mr. Mobeen's employer at the time of his disability. On information and belief, Apollo pays short term disability claims made under the Plan. Upon information and belief, Apollo is a foreign corporation, which conducts business generally in the state of Arizona.

## JURISDICTION AND VENUE

4. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for short-term disability benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. §1132. This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

5. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mr. Mobeen, as an employee insured

for disability, was supposed to be treated as a beneficiary by the Defendants as statutory fiduciaries. Instead, the Defendants have victimized Mr. Mobeen by engaging in utterly reprehensible claim handling procedures. The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendants to avoid paying Mr. Mobeen's valid claim that would otherwise be payable under state insurance law. As described in more detail below, the Defendants have clearly engaged in bad faith claim handling and Mr. Mobeen, at minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

6. Mr. Mobeen is an insured under the Life Insurance Company of North America Group Short Term Disability Policy No. FLK-980123 and Long Term Disability Policy No. FLK-980124 (collectively "the Plan"), issued to his employer, Apollo. LINA is the administrator of the Plan. The Plan provides insureds, like Mr. Mobeen, short term and long term disability benefits.

7. Mr. Mobeen was born on November 6, 1971 and is currently forty-five years old. Mr. Mobeen worked at Apollo as a Senior Software Developer since October 2009 until his disabilities forced him to stop working on or about October 2013.

8. Mr. Mobeen suffers from numerous impairments, including bulbar motor neuron disease; cervical disc disease with radiculopathy; neuromyositis;

chronic musculoskeletal pain syndrome; severe oral dysphagia resulting in considerable weight loss; progressive muscular atrophy; cervical spondylosis; cervical displacement; cervical spinal stenosis; anxiety; depression; chronic diffuse fibromyalgia; chronic pain in his face, jaw neck, shoulders, and lower back muscles. Mr. Mobeen's condition continued to worsen up until his disability date, causing Mr. Mobeen to be unable to work.

9. Due to his inability to continue working and on the advice of his treating physician, Mr. Mobeen filed for short term disability with LINA. By letter dated December 26, 2013, LINA informed Mr. Mobeen of its erroneous decision to deny benefits. (*See* STD denial letter dated December 26, 2013, attached hereto as Exhibit "A").

10. Mr. Mobeen appealed the denial of STD benefits by letter dated July 11, 2014 (*See* STD Appeal dated July 11, 2014, attached hereto as Exhibit "B").

11. Defendants upheld the denial by letter dated September 2, 2014 and Plaintiff once again appealed the denial on February 27, 2015. (*See* STD Appeal Denial letter dated September 2, 2014, and Plaintiff's 2nd STD Appeal dated February 27, 2015, attached hereto as Exhibits "C" and "D").

12. Defendants issued a final denial on Plaintiff's STD claim by letter dated May 11, 2015. (*See* STD Final Denial dated May 11, 2015, attached hereto as Exhibit "E").

13. Mr. Mobeen subsequently submitted an application for Long Term Disability benefits which was erroneously denied. By letter dated November 10, 2015, Mr. Mobeen appealed the denial for the long term disability benefits. (*See* Appeal Letter dated November 10, 2015, attached hereto as Exhibit "F").

14. LINA reviewed Mr. Mobeen's request for appeal and overturned the adverse claim determination. (*See* Approval Letter dated January 8, 2016, attached hereto as Exhibit "G").

15. In order to be eligible for LTD benefits, Mr. Mobeen had to prove he was disabled from his disability onset date through the elimination period; the same period for which LINA had previously denied STD benefits.

16. By letter dated January 27, 2016, Counsel for Mr. Mobeen wrote to LINA to inquire about Mr. Mobeen's STD benefits. The letter requested clarification as to whether the STD benefits were included in Mr. Mobeen's checks for back-owed benefits. The letter further requested if the back-owed benefits did not include the STD benefits, the STD claim would be reopened and benefits appropriately paid. (*See* Letter dated January 27, 2016, attached hereto as Exhibit "H").

17. LINA failed to provide an explanation of the benefits paid to Mr. Mobeen. Counsel for Mr. Mobeen once again requested an explanation regarding the STD benefits by letter dated January 17, 2017. (*See* Attorney Letter dated

January 17, 2017, attached hereto as Exhibit "I").

18. Despite being approved for and currently receiving benefits under the LTD policy, LINA has continued to wrongfully withhold benefits to Mr. Mobeen under his STD claim.

19. As of this date, Mr. Mobeen has been denied benefits rightfully owing to him under the Plan. Defendant's denial of Mr. Mobeen's benefits under his STD claim was grossly wrong, without basis, and contrary to the evidence. Defendant's continued failure to pay benefits even after Plaintiff's disability has been proven and Defendant has acknowledged it is responsible for payment of those benefits, is careless and a breach of its fiduciary duties to Mr. Mobeen.

20. The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Mr. Mobeen's claims as required by ERISA. Instead, Defendant acted only in its own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: reviewing the claim in a manner calculated to reach the desired result of denying STD benefits; failing to pay benefits under the STD plan while acknowledging Mr. Mobeen meets the definition of disability under the LTD plan; and failing to timely provide requested explanations of paid benefits.

21. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who

may have adjudicated Mr. Mobeen's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

22. Upon information and belief, LINA was required to evaluate claims under the STD policy at issue to pay STD claims. Under the LTD Policy LINA was required to both evaluate and pay claims, creating an inherent conflict of interest.

23. Mr. Mobeen has exhausted any applicable administrative review procedures, and Defendant's refusal to pay benefits and refusal to provide requested benefit explanations is both erroneous and unreasonable.

## **DEFENDANTS' WRONGFUL AND UNREASONABLE CONDUCT**

**A. Defendant's Refusal to Pay STD benefits after approving LTD benefits is Unreasonable.**

24. The definition of disability as provided by the STD policy is as follows:

> **Disability/Disabled**
> You are considered disabled if, solely because of Injury or Sickness, you are:
> 1. unable to perform the material duties of your Regular Occupation; and
> 2. unable to earn 80% or more of your Covered Earnings from working in your Regular Occupation.

(*See* Short Term Disability Policy FLK-980123, attached hereto as Exhibit "J").

25. The LTD policy, under which Mr. Mobeen was approved, gives the same definition of disabled as the STD policy. The LTD plan also defines the Elimination Period as follows:

> **Elimination Period**
> The Elimination Period is the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.

(*See* LTD policy FLK-980124, attached hereto as Exhibit "K").

26. The Schedule of Benefits contained within the LTD policy defines the Elimination Period as "The later of 90 days or the end of the Short Term Disability benefit period." (*See* Exhibit "K", page 2).

27. In order for Mr. Mobeen to be entitled to the LTD benefits he was awarded, he would have had to meet the definition of disability during the Elimination Period, the same period he is owed STD benefits. Therefore, LINA's approval of the LTD benefits acknowledges the fact that Mr. Mobeen was disabled during the STD period.

**B.   Defendants' Decision to Deny STD Plan Benefits was not Supported by Substantial Evidence.**

28. Although LINA acknowledged that Mr. Mobeen was owed LTD benefits, the initial review of his STD claim was severely flawed. In its consideration of Mr. Mobeen's STD claim, Defendant relied only on its own

reviewers to make a decision. LINA's reviewers concluded that, despite detailed medical records provided, Mr. Mobeen's medical records did not contain information that evidenced a functional impairment. (*See* Denial Letter Exhibit "A"). Defendant never sought an independent medical examination that would have provided additional evidence of a functional impairment. In denying Mr. Mobeen's claim, LINA failed to give proper weight to the medical evidence provided by his treating physicians.

    1. <u>Defendants' Reliance on Paper-Reviews to Deny Benefits on the Basis of Insufficient Evidence Was Arbitrary and Capricious.</u>

    29.    Mr. Mobeen's claim file is replete with medical records from his treating physicians extensively detailing his disabilities. Mr. Mobeen's physicians' assessments, as well as the testing, treatment procedures, and medications they prescribed and administered all demonstrate that Mr. Mobeen's diagnosed disabilities were extremely debilitating.

    30.    Dr. Gerald Asin, Mr. Mobeen's treating physician, provided LINA with ample records, including a Physician's Assessment that LINA requested. Dr. Asin stated in the Physician's Assessment that Mr. Mobeen was unable to sit at a computer (the main activity in his own occupation) and could not return to work even if accommodations were made. (*See* Physician's Assessment attached hereto as Exhibit "L").

31. Dr. Asin's completed Physician's Assessment was supported by office treatment notes detailing office visits where he personally examined Mr. Mobeen. The treatment notes for an October 29, 2013 visit stated that Mr. Mobeen had been seen by Dr. Asin for seven years. Dr. Asin opined that after those seven years, he did not feel Mr. Mobeen would be able to work on a regular basis and he felt Mr. Mobeen should file for disability benefits. (*See* Treatment Notes dated October 29, 2013, attached hereto as Exhibit "M").

32. The records of Mr. Mobeen's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that he is disabled based on their numerous personal examinations, testing, and procedures. LINA's hired medical reviewers, on the other hand, did not examine Mr. Mobeen. The conclusion that Mr. Mobeen was not disabled was based merely on hired reviewers' assessment of his medical file. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801,809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the

opinion of its consulting physician").

33. In weighing the opinions of Mr. Mobeen's own treating providers against those of the medical reviewers retained by LINA, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)). The Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual." While *Nord* provides that this Court is not required to adopt a per se rule to treat Mr. Mobeen's physicians' opinions with more weight than those of Defendant's medical assessors, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 795-96 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits . . .").

34. Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001). The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias. Clearly, in Mr. Mobeen's case, these decisions indicate that his own medical physicians' evaluations should be afforded far greater weight than those of the Defendant. Accordingly, Defendant's denial of Mr. Mobeen's STD benefits, based on insufficient evidence, was arbitrary and capricious.

  2. <u>Defendants' Failure to give Proper Weight to Mr. Mobeen's Credible Supportive Evidence Was Arbitrary and Capricious</u>.

35. Mr. Mobeen's treating physicians, who have no financial stake in the outcome of his claim, reached the opinion that he is disabled based on their numerous examinations of Mr. Mobeen. The opinion of Dr. Asin, an internist who

treated Mr. Mobeen for several years, is consistent with the objective medical evidence in Mr. Mobeen's claim file, including examinations and lab results. The Social Security Administration also found that the opinions of Mr. Mobeen's physicians credible and consistent with the other evidence of record and found Mr. Mobeen totally disabled and entitled to Social Security Disability benefits.

36. Instead of giving greater weight to the opinions of Mr. Mobeen's treating physicians, LINA manufactured support for its termination based upon the opinions of its own case managers. LINA's reviewers never examined Mr. Mobeen; they were simply paid by LINA to come to the predetermined conclusion that Mr. Mobeen was not disabled under the STD policy.

37. The baseless findings of LINA's non-examining reviewers stand alone as the only findings in Mr. Mobeen's file suggesting that he was not disabled during the period of time he was eligible for STD benefits and are overwhelmed by the numerous treatment records and the opinions of his treating physicians suggesting the opposite. Further LINA's payment of LTD benefits is an acknowledgement that Mr. Mobeen was disabled during the elimination period, the same time period for which he should have received STD benefits.

38. Defendants' refusal to pay STD benefits is inexcusable.

39. As of this date, Defendant has refused to pay benefits rightfully owed to Mr. Mobeen under the Plan at issue.

### 3. Defendants' Denial of STD benefits conflicts with the Social Security Administration's Determination that Plaintiff is disabled.

40. In contrast to LINA's medical consultants' findings, the Social Security Administration found Mr. Mobeen disabled and granted him Social Security Disability benefits. The Social Security Administration's disability decision should be a "significant factor" in a Court's consideration of an administrator's decision to terminate plaintiff's disability benefits. *Glenn,* 461 F.3d at 669. *See also Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 294 (6th Cir. 2005) ("the SSA determination, though certainly not binding, is far from meaningless").

41. Even though a favorable decision in a Social Security disability appeal does not make a claimant automatically entitled to disability benefits under an ERISA plan: [i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious. *Bennett v. Kemper Nat. Services, Inc.,* 514 F.3d 547, 554 (6th Cir. 2008). *See also DeLisle v. Sun Life Assur. Co. of Canada,* 558 F.3d 440, 446 (6th Cir. 2009).

42. The Sixth Circuit has held that it is "totally inconsistent" to require a claimant to apply for Social Security disability benefits, avail itself of the SSA's determination and, at the same time, contend that the claimant is not disabled.

*Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, (6th Cir. 2003) (partially overruled on other grounds by *Black and Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003)).  Although an ERISA plan administrator is not bound by an SSA determination finding of total disability, it is inappropriate for a plan administrator to discount an SSA award in making benefit determinations, especially when the claimant was required to apply for SSA benefits. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 553(6th Cir. 2008). Indeed, "a decision by a plan administrator to seek and embrace an SSA determination for its own benefit, and then ignore or discount it later, casts additional doubt on the adequacy of their evaluation of . . . [a] claim[.]" *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294-95(6th Cir. 2005).

43. In *Darland v. Fortis Benefits Insurance Company,* 317 F.3d 516 (6th Cir. 2003), the Sixth Circuit held that a court should consider a favorable social security decision as evidence that an insurance company acted arbitrarily and capriciously by requiring a claimant to apply for social security, then ignoring the favorable social security decision. The Court explained:

> [I]t is totally inconsistent for Fortis to request that Darland apply for social security disability benefits, yet avail itself of that social security determination regarding disability to contend, at the same time, that he is not disabled. ... Though not directly applicable in this case, the principles of judicial estoppels certainly weigh against Fortis taking such inconsistent positions.

317 F.3d at 530.

44. The Eleventh Circuit in *Melech* examined the juxtaposition between a defendant insurer's self-interested SSD benefit policy requirements and its failure to give a SSA decision appropriate weight in its own disability denial determination under that same policy. *Melech v. Life Insurance Co. of N.A.*, 739 F.3d 663 (11th Cir. 2014). On appeal, the *Melech* Court described defendant LINA's policy in that case as follows:

> To summarize, the Policy effectively requires all claimants to apply for SSDI [Social Security Disability Income] at the outset; if a claimant fails to do so, LINA can reduce her benefits under the Policy, if any, by the amount of SSDI LINA says she could have gotten. In the event that LINA decides to pay a claim, the Policy allows LINA to hold the claim open, at least with respect to the total amount LINA must pay, until the SSA reaches a final decision. LINA may assist the claimant in obtaining SSDI, even going so far as to transfer the medical evidence that LINA gathered to LINA's vendor, who then presumably transfers it to the SSA. And if the SSA denies the claimant's application, LINA can force the claimant to exhaust her administrative appeals. All this effort makes perfect sense from LINA's perspective because--having decided to pay the claim--every dollar the claimant gets from the SSA is one less dollar LINA has to pay.

*Melech*, 739 F.3d at 668. Given these policy provisions and the fact that LINA, at the time of its denial, did not have the evidence plaintiff presented to the SSA, the Court held "*that LINA had an obligation to consider the evidence presented to the SSA.*" *Id.* at 666 (emphasis added). The Court went on to state that "in light of these openly self-interested efforts, *we are troubled by the implication of LINA's actions in Melech's case, where it ignored her SSDI application and the evidence*

*generated by the SSA's investigation once it no longer had a financial stake in the outcome.*" *Id.* at 674 (emphasis added).

45. In the matter at hand, the LINA required Mr. Mobeen to apply for Social Security disability benefits and exhaust the highest level of SSA appellate review in the event such SSD benefits were initially denied. LINA offsets Mr. Mobeen's monthly LTD benefit by the entire amount of his monthly Social Security benefit. LINA is receiving the benefit of Mr. Mobeen's Social Security award every month but has not considered the SSA evidence in denying his STD claim for benefits. Defendants' decision to continue to withhold payment of STD benefits to Mr. Mobeen's benefits is, in light of these circumstances, particularly egregious.

    **C.**    **LINA Has Been Fined for Similar Questionable Claims Handling practices.**

46. The states of California, Connecticut, Massachusetts, Maine, and Pennsylvania have agreed to a settlement with Cigna Insurance Company, on information and belief, a subsidiary of Defendant, wherein Cigna will pay approximately $1.6 million in fines and fees. The Company and its subsidiaries also set aside $77 million for projected payments to policyholders whose claims weren't handled properly. The settlement covers policyholders in those states that had claims denied between January 1, 2008 and December 31, 2010. As part of the settlement, Cigna has agreed to update its claims-handling processes as state

17

standards for claims procedures have evolved overtime. Under this settlement, Cigna is also required to enhance claims procedures in the future and participate in a two-year monitoring program conducted by the insurance departments of the five lead states.

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

47. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

48. At all times relevant to this action Mr. Mobeen was a participant of and insured under Short Term Disability Policy No. FLK-0980123 and Long-Term Disability Policy No. FLK-0980124 ("the Plan") within the meaning of 29 U.S.C. §1002(7) and was eligible to receive disability benefits under the Plan.

49. As more fully described above, the refusal to pay Mr. Mobeen STD benefits under the Plan for the maximum benefit period beginning on or about October 2013 constitutes a breach of Defendant's obligations under the Plan and ERISA. Defendant's decision to deny Mr. Mobeen's benefits constitutes an abuse of discretion as its decision was not reasonable and not based on substantial evidence.

50. Mr. Mobeen brings this action to recover benefits due to him and to enforce his rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. The applicable standard of review in this case is *de novo*;

2. That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3. From at least October 2013 through the present, Mr. Mobeen met and continues to meet the Plan's definition of "Disabled";

4. Defendants shall pay Mr. Mobeen all benefits due for the maximum STD benefit period beginning on or about October 2013, in accordance with the Plan;

5. Defendant shall pay to Plaintiff such penalties as allowed for the violation of ERISA § 502 (c);

6. Defendants shall pay to Plaintiff such prejudgment interest as allowed by law;

7. Defendants shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

8. Defendants shall pay attorney's fees for Plaintiff's counsel;

9. Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

        Respectfully Submitted,

        _/s/ Peter H. Burke_____
        Peter H. Burke (ASB-1992-K74P)


        */s/ Amanda Stansberry-Johns*
        Amanda Stansberry-Johns
        (ASB-7793-M64S)


**OF COUNSEL**:
**BURKE HARVEY, LLC**
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax:   205-930-9054
pburke@burkeharvey.com
ajohns@burkeharvey.com


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

LIFE INSURANCE OF NORTH AMERICA
C/O CT CORPORATION SYSTEM
2 North Jackson Street
Suite 605
Montgomery, AL  36104

Apollo Education Group
4025 S. Riverpoint Parkway, Mail Stop CF-K 703
Phoenix, AZ  85040